Third case on the argument calendar this afternoon is number 05-5158 Metz v. United States Third case on the argument calendar this afternoon is number 05-5158 Metz v. United States You've reserved five minutes for rebuttal? I have indeed. Okay, go ahead, whenever you're ready. And may it please the court, the trial court made three critical errors which compel a reversal in this case. The first, it considered issues not previously argued before the DCMR, notably the ineffective assistance of counsel claim, which is not only relevant for purposes of jurisdiction, but also... What about the issues that we asked you about in the supplemental letter? I would go to those immediately, Your Honor. Was this part of the court-martial proceeding? The short answer is no, but it's a more complicated matter, of course. If you look at Article 76, which I believe is where the term part of a court-martial proceeding came from, Your Honor, is question and stress. That discusses things essentially where there can be an appeal, et cetera, through the different courts of military appeal. And this would not be one of those matters, so the Article 76 finality would not apply to it. However, Chapter 4 is inextricably intertwined with a court-martial proceeding. And if you look at Chapter 4, we provided the court, of course, with 3910, the appropriate regulation of time, and of course, its successor is the Air Force instruction. There are a lot of reasons for that. First of all, of course, you cannot submit a Chapter 4 unless there, in fact, is court-martial charges pending. It must actually be preferred. And, in fact, you can't submit a Chapter 4 unless the sorts of charges available or preferred against you to have any punishment of a bad kind of discharge authorized. Of course, the individuals who act upon a Chapter 4 are the special court-martial convening authority, again, of course, intertwined with the court-martial itself. And the decision-maker is the general court-martial convening authority. Depending upon what stage we are in the court-martial proceedings depends on who decides what happens. For example, if there's been an Article 32 hearing, which is the military equivalent of a grand jury, well, then if there hasn't been one, the special court-martial convening authority can say, no, I reject it. But if there has been one, even if the SPCM, special court-martial convening authority, doesn't want it, he still has to forward it to the general court-martial convening authority to decide upon it. If the charges have been referred, if you look at Table 4-1 of 3910, that is, again, part of the court-martial proceeding, different individuals determine at what point or what effect the Chapter 4 has upon the schedule of the trial. And, in fact, if the Chapter 4 is submitted during the pendency of the trial, the military judge has some authority to either hold off on the case or allow it to continue. All of these things show you in the regulation that they are, again, inextricably intertwined. Now, again, for Article 76, I would say the answer is no, it is not a part of the court-martial proceedings. But those finality requirements, we go to the second question the court asked, whether or not, considering the court's precedents in Mattias and the Supreme Court in Schlesinger, Bolling, and, of course, even going back to Runkle back in 1876, we see that all those cases tell us that a question about whether or not a military defense counsel was constitutionally adequate, whether or not he or she was effective, is one of the court-final claims really should not have jurisdiction considered, even in the Chapter 4 context. But is there a constitutional right to counsel here? There wasn't a term of imprisonment imposed. And under Supreme Court decisions in Nichols and in earlier cases, if you're charged with a misdemeanor and you get hit with a fine, there's not a violation of the right to counsel. And even in a felony proceeding, it looks as though if you're not actually convicted of the felony, there's no right to counsel. So this whole proceeding before the Court of Federal Claims proceeded on the assumption that Strickland applied and that there was a constitutional right to counsel here and that the counsel under Strickland had to be effective. But that's not right, is it? Well, absolutely not. It's not a constitutional right to counsel. Now, by regulation, there's a right to counsel. Yeah, under the regulation, there's a right to counsel. But it's not a constitutional right to counsel. Oh, it's certainly not. It's certainly not. Again, this is just at the administrative level. And, of course, that's what we're talking about here at the administrative level because we never actually got to the court martial. Now, this is all pretrial things that were happening at this time. But the government's not disputing that, I mean, if there is some sort of right, whether it's based on regulation or otherwise, that he had a right to counsel here. And if effective counsel and that right were violated, then something ought to happen. Well, 3910 specifies that the counsel is to be available and that he or she is to actually go through the certain things that are specified in the one-sheet checklist, that if you do get the discharge, you might lose veterans benefits. You could have a UOQ under other than honorable conditions discharge. Those things are actually set forth in the regulation. It would say, yes, you have a regular part right to those specific things being met. Now, whether or not it rises to a stripling standard, we certainly haven't challenged that, of course, in this appeal. However, I would suggest that the stripling standard for an administrative hearing like this is certainly much lower than the stripling standard would be for an actual trial, of course, because we haven't actually had the adversarial process to flesh out exactly what counsel had done or had not done, and his or her, in this case his, and actually to counsel, both civilian and military counsels, decision-making. Because, of course, we didn't have the opportunity to see how things would play out in the battlefield. But you are advocating, are you not, if we reach against your advice, if we reach the ultimate issue of an effective counsel, and your main argument there deals with the standards that are set forth in terms of what he has to prove. Well, I guess in the first place we would suggest that the court can't even get there because the DCMR never got there. And Mr. Metz never has. We'll get to that in a minute. That's your first point, your first line of defense. We're still on the last point. If you go to the last point, and I apologize, obviously the question becomes what was he required, what would a reasonable counsel have done? And the only evidence was that he did what a reasonable counsel did. Of course, we know that Moyet says that it was presumed competent, and it's a high presumption. And all we have is that he did not seek a DNA test. Well, nobody sought DNA tests back in 1994. In fact, there's no evidence whatsoever that anybody sought DNA tests even in 2005 and 2006. The only evidence was Lieutenant Colonel Kocher, who was the actual judge advocate general officer who was in charge of sort of overseeing the drug test laboratory as a JAD, who said, look, I'm aware of all the tests that are requested, and nobody has asked for an analysis. Well, why does the government agree that if there's ineffective assistance of counsel under the regulation put aside in the Constitution, that that renders this acceptance of the administrative discharge involuntary? I don't think that's right, Your Honor, because, again, I guess it depends on how it could possibly be ineffective. If there is a misleading going on, and that's of course what Tippett and Scharf and those things suggest, then you sort of go beyond the voluntaryness and get more of the substance. And if a government agent has led an individual, it's going to happen. But, of course, whether or not there's even, I would suggest almost even ineffective assistance, as long as there's no misleading and there was a voluntary knowing waiver on the part of Mr. Metz, we're probably out of the debts there. But that's the issue, is it not, whether or not it was a voluntary and knowing waiver, if there was bad advice or lack of it, the absence of reasonable advice by the attorney. Well, Your Honor, we would strangely object to the suggestion that there was bad advice or not good advice, because, frankly, the evidence just wasn't there. Yeah, but that's on the merits. We're talking about theoretically what he has to prove. Well, you want to move to the waiver issue, go back to the beginning? Your first point. Let me ask about the waiver issue. Let's assume, except for a moment, that we can distinguish the jurisdictional question, at least, well, the voluntariness of the waiver question, separate and apart from the merits of the case about whether or not the DNA evidence, in fact, was contaminated or whatever. Yes. On that waiver issue, then, on just the question of voluntariness, isn't that the nature of a jurisdictional issue that could be brought up anytime and even alone by the Court of Claims? What's the problem with the Court of Claims having raised that on its own? Well, first of all, it is not as easy to separate out the merits with the jurisdiction here, because by the merits decision that BCMR had made, it considered the waiver issue. That is, in the original decision of the BCMR when it said, we're going to rule against you on the merits, one of the matters it considered was actually that there was waiver. No, I understand that. So therefore, it becomes almost impossible to separate them out. On a theoretical level, we would suggest that, again, if we were to get past the first question about the waiver, that is him not bringing it up, the next step would be where do we actually examine this? And we examine it by essentially a recreation of the court martial law, the Court of Claims, which is almost what happened in this case, or do we remand it back to BCMR? But let's stay on the waiver, because then you get another. To me, as I understood the brief, the first argument was waiver. Yes, Your Honor. Then if we don't buy the waiver, then we at least have to send it back. The waiver being that he did not assert ineffective assistance of counsel before the board. He doesn't have to go to the board, right? There is no exhaustion. Absolutely right, Your Honor. But your contention is that because he did go to the board, he had to raise everything before the board. That's correct, Your Honor. Because under Sanders, which is the Court of Claims case, of course, once you go to the board, you are essentially stuck with what the board decided, and you must therefore review the administrative record of the board. Certainly, if you're going to take a bite of the apple. Even on a jurisdictional issue, let's assume we read this as a jurisdictional issue. Let's assume we take out, we separate, we say we're not going to even reach anything the court-martial would have been about until we establish whether or not he's voluntarily waived his right to go forward and settle this case. That's the only question before us. I would still say, Your Honor, that, first of all, I would suggest that it would be much more difficult, even just in the facts of this case, going theoretical, if you were to look at Dick, this court's decision, it would sort of suggest how difficult it was to separate out jurisdictions of variance. But even if you were to go there, I would suggest that the waiver issue still is one that should have been brought up before the BCMR, because it drove everything in this case. Well, the waiver issue was brought up. It was the ineffective counsel aspect of that that was not brought up, as I understood it. Well, the BCMR said he waived his rights, and he never had an excuse before the BCMR. Right. No, so what wasn't brought up, what you're contending was waived, is the argument that it wasn't voluntary because I had ineffective counsel. That's correct. And in fact, Your Honor, one might almost forgive Mr. Metz if he had not brought it up the first time he went to the BCMR, because one might speculate that maybe he didn't know the BCMR was going to go there. But he went to the BCMR twice. The first time, and then after the Urine Bottle was destroyed, he went back in for reconsideration, and he knew that the issue of waiver had been brought before the BCMR, and still he did not allege that his counsel was ineffective. So even if, and I think, frankly, he should have, if he was going to bring it up, he should have brought it up even the first time. And he was well aware that the government was going there with... But to get back to my question, let's assume that he goes up to the Court of Claims, and the Court of Claims says, before I reach anything to do with the merits, I'm going to figure out whether or not we should even be here, because it appears to me on its face that he's waived his rights. Can the Court of Claims and the Board resolve that issue? Could the Court of Claims, when he comes up and says, ineffective counsel, and he concedes that he never raised that before, can the Court of Claims say, well, we're looking at jurisdiction here, we're looking if we can even get past the settlement, and therefore I can decide it's within my discretion to entertain arguments that could have been raised but were not raised below. Our position is that the Court of Claims cannot. Why? And the reason is because the circumstances of that waiver are so much a part of the facts of the case. The jurisdictional circumstances are so much a fact of the merits of the case brought before the BCMR that it is something that had to have been brought before the BCMR to have given basically an opportunity for the agency to address and to deal with. Because if there had been no Chapter 4 in this case, if there had been no waiver in this case, there would have never been the BCMR case the way it was, and the posture the way it was. It is impossible to separate them out of that, with all due respect. And of course, even if it could be separated out, which of course we suggest cannot be kept in this case, and especially if you look at the Court Trial Court's decision, you see that it imported wholesale the waiver arguments, the effective assistance arguments, under the merits aspects of that. Okay, but let's assume hypothetically it could have been separated out, and therefore? Your Honor, I cannot imagine a circumstance in which a jurisdictional matter like this, when there is a view of a Chapter 4, can be separated out. What's jurisdictional about it? Well, of course, if an individual resigns his or her, I don't want to say commissioner, because he's a lawyer, that's a non-commissioned officer, his position, he no longer has a paying power. But I understand why it's jurisdictional. In our decision in Garcia, the question of whether it was voluntary or involuntary, delineated the jurisdiction of the board, the Merit System Protection Board. But the Court of Claims jurisdiction here doesn't depend on voluntariness or involuntariness. It's just a question of whether he has a claim on the merits, isn't it? Well, Your Honor, if he has resigned his authority to be paid, there is no longer a money-mandating statute that is implicated by... Take a look at Fisher. I mean, I've thought we've distinguished between these jurisdictional issues on the money-mandating statute, and the question under the money is, is the statute construed to reach this kind of thing, as opposed to under the facts of this particular case, is it voluntary or involuntary? Well, I'm confused by Your Honor's question, because the question about jurisdiction and why it was the United States brought a motion to dismiss for lack of jurisdiction in this case was that when a service member resigns, he's no longer entitled to pay. And therefore, the Court of Federal Claims has no power over jurisdictional issues in this case. Mr. Pratt, let me ask you a question. Is it your position that... And this, I guess, goes to your second one. I know you say in this case that the Court of Federal Claims should not have had a hearing on the jurisdictional issue, but rather should have sent that back to the board, correct? Yes, sir. Is it your position that the Court of Federal Claims in a military personnel case like this, where there's been a correction board decision, should never have any kind of a trial proceeding itself, and that it should always send the matter back to the correction board? Yes, Your Honor, because essentially... Even on any kind of an issue? Yes, Your Honor, and Overton Park. Pardon? Citizens Reserve Overton Park. Well, but that hasn't always been the case. I mean, the Court of Federal Claims has held trials in military personnel cases. Indeed, Your Honor. But as the law has developed at this point, when it has become much more crystal clear that military personnel matters that have been before the BCMR are record review cases, and you're reviewing an administrative record... And you're saying, since that's the case, even if an issue was presented in the Court of Federal Claims, arguably for the first time, it should still be sent back to the board. Exactly, Your Honor. And of course... But that hasn't always been the case. I mean, you look at a case like Cole v. United States, where the question was whether an officer had been improperly denied the right to withdraw a resignation. That issue was not sent back to the board. It was heard on a trial in the Court of Claims. Sure. I understand, Your Honor, that in the past there have been cases where there have been essentially many trials in the Court of Claims, or perhaps even in the current Court of Federal Claims. However, whether or not that has happened in the past or not, certainly as a jury... No, but that was a ruling of the Federal Circuit, or the predecessor of the Federal Circuit. I understand, Your Honor. I understand and recognize that at one point there were many of these cases that were tried. But the issue of whether or not those cases should have been remanded and considered on the administrative record was not swirly before those courts. So you're saying that any case in the past that has had a trial proceeding in the Claims Court, now the Court of Federal Claims, in a military personnel case, that's incorrect. Well, I'm saying, Your Honor, that that issue was not swirly before. But you would say it's incorrect to do that. I would say that it should not have been done. And the reason is because, as you say in your brief, it's the reason that the only... the job of the Court of Claims here is simply to review what the board has done under the substantial evidence standard. Absolutely, Your Honor. But that's only if there was initial resort to the board. Yes, Your Honor. Under Martinez, there's no requirement that you resort to the board. There is no requirement, Your Honor. And, of course, it's very possible that some of those cases that Your Honor was referring to might have been cases where there was no initial resort to the board. No, in Cole there was resort to the board. I... forgive me for not... However, I would suggest that, generally, if there has been a resort to the board, that the proper resort is to, if necessary, remand for a simplification of the record. And, in fact, even in Martinez, this Court stated that the trial court had the power to do so. And there's really no reason not to do so in this case. There's no reason that you should not take advantage of the DCR, which has the ability to sift through the grist of military personnel matters and provide a reasoned opinion, which would be, therefore, subject to review by the Court. Well, I don't understand that. I mean, I understand the waiver argument, that they didn't raise it before the board, so it's too late. But I don't understand what line of cases says that if it wasn't waived and the Court of Federal Claims can properly consider it, that they must remand to the board. Well, Your Honor, I mean, first of all, we suggest that there's not always... No, no, but what's the answer? What line of cases suggests that? Well, the line of cases that suggest that you are firmly with an administrative record and you don't go beyond the administrative record when you're reviewing administrative proceeding starts at the original court. But what about in this context? What about the Corrections Board? Military Personnel Corrections Board. Have we ever held that if the thing wasn't waived and it's properly before the Court of Federal Claims that the Court of Federal Claims must send it back to the Corrections Board? I thought it was discretionary with the Court of Federal Claims as to whether to send it back or not. I know of no case, Your Honor, which states directly that in a military personnel case that it must be remanded back to the board for development of facts. But again, the evidence... There are cases which very directly say, Sanders, that it is a record review. And if it is a record review, we know that we stick with administrative record. Overton Park gives us the very, very few exceptions to the rule where we have an administrative record review where you don't send it back to the agency. But certainly, if you look at all the administrative record review cases, Supreme Court precedent, et cetera, can't be pitted. We send it back. Mr. Prouty, thank you. I think you've gone over your time. But you were questioned by the panel. I would just note again the Cole case. It's 689 Fed 2nd, 1040. And that's a case where the court of claims, whose precedent binds this, directed to send it back to the claims court for a trial in a military personnel case where there was the claim that someone had not been allowed... that they'd been wrongly denied the right to take back a voluntary resignation. So there is that history. But anyway. But Mr. Myers, we'll hear from you now. Mr. Prouty, through no fault of his, was kept at the podium probably longer than he intended. And we will not shortchange you if you find yourself up there needing the same additional time. I think he got basically... he got five... he had all of his main time, plus I think he got about five extra minutes. And we'll give you your rebuttal back, Mr. Prouty, because you were up there with a barrage of questions. So you will also have the additional time that you need, Mr. Myers. Thank you, Your Honor. Your Honor, my name is Gary Myers, and I represent Mr. Metz. Given the inquiries raised by the court, I wonder if I am not best served by simply entertaining questions from the court rather than going off on a particular course. I'm happy to do that, if you wish. And if not, I will begin my argument by simply saying this. There isn't a chance that the review that Mr. Metz received in the Federal Court of Claims could be replicated before the Air Force Board for correction of military records. Why is that? Because we would not have a hearing with them. They are not inclined to have hearings. But they can. They can. They can. But they typically do not. In addition to that, they do not place individuals under oath. We would be left, most probably, with an affidavit from counsel of the kind that we would see in cases involving ineffective assistance of counsel in criminal matters preliminarily. I don't understand. So what is the point of... What point are you trying to make? Assume hypothetically the Court of Claims in this instance had sent it back to the Board because they said there were evidentiary issues that ought to be sorted out and heard in the first instance in the Board. Are you suggesting they wouldn't be allowed to do that? They certainly would be allowed. I'm simply pointing out, Your Honor, that what resulted here was the best possible result and nothing more than that. It strikes me, and maybe I'm misreading or over-reading the brief, it strikes me that the major, if not the only argument you make with regard to waiver here, was that kind of it didn't come up below. And it came up before the Court of Claims, the notion of voluntariness. And it came up before the Court of Claims in the motion to dismiss by the government, and that's for, therefore, it just never came up. There was no issue before the Board. Am I sparingly stating your position? That's pretty much on target. Okay, I don't understand that. Looking back at the Board and even what the Court of Federal Claims says about the Board opinion, because the Board did cover and address the issue of voluntariness and concluded that indeed the document was voluntary. Yes, and what we've said to that point is this. Yes, it was voluntary under the circumstances that existed. What made it involuntary was the fact that he later came to know of a scientific fact that he did not know previously. In other words, one has to... before the Board. How do you distinguish Sanders? That's, I think, the question that Judge Prost is basically asking. Yes. There is no excuse for not raising it, Your Honor. It is simply that in the view of, in my view, at the time in prosecuting this matter before the Air Force Board for Correctional and Military Records that it was appropriate to deal with the substantive question of whether or not this was a tainted sample because if it was a tainted sample, in fact, then the equitable remedies available under 10 United States Code 1552 to the Board would flow automatically. There would be no need to suggest that there was ineffective assistance of counsel. If this Board saw that a sample was tainted, they most assuredly would have rendered a decision which would have been beneficial to this individual. I frankly... Why is that? I mean, is that assured? I mean, don't they have to get by it? I mean, someone comes in and let's assume the government hadn't thrown out the sample, so you still have a sample, and you can show that the testing was wrong and indeed this didn't show any metabolite, whatever it was. Don't you still have to get by the issue of, in order to challenge that again, don't you have to get by the issue to show that the waiver, the voluntariness was not voluntary? I don't believe so. I believe that once the Board knew a fact certain, which we believe it did know a fact certain, that it had the authority to simply say that remedy is appropriate under these circumstances. So you're saying that even though you never raised the issue of whether or not the settlement was voluntary or involuntary before the Board, they raised it sua sponte and covered it in their opinion and concluded it was voluntary, notwithstanding the fact that it hadn't been raised as an issue? Yes. And beyond that... Okay, well, assuming that's correct, you went for reconsideration, or you had the ability to go for reconsideration. I did go for reconsideration. So once you've realized that the Board's got a problem with the voluntariness in the settlement, you had a second chance to go in and argue before the Board, no, it wasn't even... you shouldn't be worried about the settlement because there was ineffective counsel, and you didn't do that either, did you? No, I did not. And I'll tell you why I didn't do that, because the reason we sought reconsideration was because we had lost the opportunity to utilize the sample. And so I sought reconsideration because I felt that their underlying decision was an error, and I brought in additional evidence from the scientific side of that equation to demonstrate that, in fact, the sample was tame. And under those circumstances, under those circumstances, the request for reconsideration was simply this. Look at this again. You're wrong about the question of whether this sample is inconclusive. In fact, it is tainted. And I understand the argument, John, but I simply do not believe that it is essential to deal with the question of voluntariness, and in a setting where the underlying question is one of fundamental fairness and equity as to whether or not the facts upon which one relied were accurate. But the question before us isn't whether or not it's essential or not essential to deal with voluntariness. Put that aside. The question before us is, when you raise the issue of ineffective counsel before the Court of Federal Claims, whether it's required that you have raised that bluff. So whether it's essential or not essential, it was presumably essential enough to raise it before the Court of Federal Claims. I understand your question, and the point that we make to you is twofold. Firstly, try to couch it in terms of not necessarily the constitutional and effective standard, but also one of informed consent, which we felt took it outside of those concepts for the Federal Claims Court to look at. Number two, the issue that we saw when we came to the Federal Court of Claims was that we had identified with specificity what the problem was, and that the government raised the question of lack of jurisdiction. I mean, I'm not sure. The government wants to call everything jurisdiction. It's not all jurisdiction, but putting that to one side. How do you distinguish Sanders? I mean, it's binding on us as a panel. What Sanders holds is if you go to the Corrections Board, you've got to raise everything there, and Martinez didn't change that. How do you get around that? Well, I think the way we get around it is, and I'm not trying to get around it in a majority sense, but the way we look at it from our perspective is very simple. It is that the government raised the question of a voluntariness issue that goes to the question of jurisdiction, and that we have an opportunity through extrinsic evidence, not on the record, to demonstrate that jurisdiction is appropriate. Why is it jurisdictional? What's jurisdictional about the question of ineffective assistance of counsel? What's jurisdictional about that? If it goes to the question of voluntariness, it's jurisdictional. Why is voluntariness a jurisdictional question? Well, because to get to a conclusion that the Military Pay Act, the underlying act that provides us with the ability to be before the federal court of claims, we have to be able to show that there is an entitlement to continuing income. Yeah, but the question of entitlement is a merits question. The question of statutory construction, whether this particular statute is a money-mandating statute, is a jurisdictional question, but it's been held, it's clear, that the Military Pay Act is a money-mandating statute, so there's jurisdiction. So the question of whether your client comes under it or not would seem to be a question of whether he has a claim, whether it's a federally stated claim, whether he has a claim on the merits. What's jurisdictional about the question? I understand. I understand. What we would say ultimately is this. We have the opportunity, we believe, in a setting such as we found ourselves in, to explain to the judge, as we did at Appendix 833, that there is a facial claim made in the complaint, and that that facial claim is sustainable unless there is no doubt that it can't be sustained. And once we cross that threshold under land, we are then in a posture to ask for multiple remedies to include affidavits, a hearing under Tippett, or in the alternative, a remand to the AFB-CMR, all of which, my ally, we did. We simply said to the court, there are three options. We think there are three options available to you, and the court selected the Tippett option. But your response, back to the waiver question, your response was that the only reason the ineffective counsel issue came up was because the government had raised a motion to dismiss. The only confusion, and I'm sure there's a good answer to this, when the Court of Federal Claims, in its opinion, refers to your raising this argument, the citation they give is your motion for summary judgment. Now was your motion for summary judgment when was that filed in connection with the government's motion to dismiss? It was filed subsequent to it, of course, Your Honor, I believe approximately 30 days after the government filed. But I would also respectfully suggest to you that there was a colloquy between myself and the judge in this case involving the very question of whether or not enough had been done to invoke jurisdiction. And that's at Appendix A33. It's not very lengthy, but the judge there says quite clearly, I don't know how explicit it is, but it's certainly implicit in everything that is before me. And that is perhaps how he came to the conclusion that the motion for summary judgment was assisting in that regard. But that was subsequent to oral argument before the judge. And then he went to the issue, is your reading of the Court of Claims that the issue of ineffective counsel went to the merits as well as to the voluntariness? It's a very lengthy opinion with a lot said. One sentence says that the two that he did, the judge below, did involve ineffective assistance counsel in his thinking with regard to the merits. But if you look at the opinion with respect to the merits, he addressed almost exclusively the issues raised with respect to the tainted sample. Can I take you back to what Judge Dyke started when he asked dealing with the government, the questions with regard to whether or not there's a requirement for effective counsel on the basis for that. Do you agree that there's no constitutional requirement in this context and so whatever requirement exists is derived from the regulations Very clearly, I do not believe that the regulations involving separation are inextricably tied to a court-martial. In fact, I believe quite categorically that they are separate and apart. And the best way I can describe that is that although the same people are involved in the prosecution of these matters, in the military sense, they wear what is colloquially referred to as they're just simply two tracks, parallel in nature, spawned by one event, but nonetheless not contemplated to be intermingled except to the extent that one is an administrative way of relieving the command of a court-martial and relieving the service member of the burden of going through a court-martial. But I guess if we're talking about this proceeding and the court-martial which would have provided at worst I think a six-month incarceration. Yes. Is it your view that your right to effective counsel in connection with negotiating the settlement or the withdrawal of this case is required under the Constitution or is derived from something else and if so, from whatever? It is. And again, I discussed this with the judge below. This is not, in my mind, a classic constitutional requirement insofar as the settlement discussions are concerned. But I would remind the court that at that moment in time the lawyer involved was in fact representing this man pursuant to preferred and referred charges. So this lawyer was acting in his capacity as a criminal defense lawyer bringing to bear all the strictness because he was representing this individual in a criminal setting. Now, if the court chooses to spin off and reduce the standard because as part of that he negotiated an administrative matter, well of course that's for the court to decide. But I would like to make it clear that from the moment he undertook the representation of that client he was a criminal defense lawyer in the criminal justice system at that moment. And the government's view on the merits of that issue, which is that it was incumbent upon your client to prove up what the standard was that this standard of DNA examination was existent in 1994 and that you failed to do that? Your response? This case is a very old case. We've been at this a long time. In 1994 the state of play was relatively simple with regard to DNA. There are very few cases that have been tried in the United States. The first military case was tried in 1988 using cell mark out of Maryland. There are multiple laboratories that had developed the expertise to do DNA testing. PCR was on the verge of being developed. It became something that was used in the early 90's as a methodology for small amounts. The point I would like to make to you is it was there and there were lawyers using it for criminal defense and for defense of charges involving all sorts of matters. What you're telling me now is less relevant than are you telling me that that was the evidence you put in the record? What we put into the record with the military judge was the Metcalf case which demonstrated that the military was well aware of the and all lawyers who read the military justice reporter were well aware that DNA testing was something that could be available. We put that in. We put in evidence that the military had first tested the DNA, first utilized DNA in a defense of a case in 1988. Dr. Skogerby testified at length in her testimony as to what was available during that period of time. That was part of the evidentiary hearing. Her testimony commences at a I think 195. At any rate, yes, we did put matters in. Serial is that we went along. Initially, we only put in those things I've described. As the evidentiary hearing progressed, we put in much more with Dr. Skogerby's testimony. Could I ask you one more question here before you sit down? And that is, I understand the contention about the ineffective assistance of counsel in relation to this DNA testing as you've just been discussing with Judge Prost, but the Court of Federal Claims decision seems to go beyond that and to suggest that there was ineffective assistance of counsel in advising the appellant here about his Chapter 4 separation. And what was the contention with respect to that? In the first instance, Your Honor, we raised ineffective assistance of counsel in a narrow way because we didn't know the facts. But as the evidence developed, the Court concluded that there were multiple examples of ineffective assistance of counsel. Okay, but my question is, what's left? Let's suppose, just hypothetically, I know you're not going to like this hypothetical, but just hypothetically, that there was nothing wrong, they did nothing wrong in relation to the DNA testing. Forget that that's out of the case. What's left? What is left is the advice given to this individual about what defenses were available. What do you mean, what defenses? What defenses might be available under the circumstances? Only one defense was discussed. That was the good soldier defense. Well, what were the other defenses that he wasn't advised about? First of all, you look to see what testing can be done on the sample itself. Well, that's DNA. You look to see passive ingestion, that is to say, well, actually, the testing could have involved a retesting of the substance to determine whether or not Put all that aside. Put aside all the testing that could have been done. What else did they do? Passive ingestion was available as a defense. That means, of course, that the material got into one's body. Yeah, but put all that aside. Put all the things having to do with the sample aside. What was ineffective about the representation apart from all that? The failure really to be communicative with the client. He was signing things in a perfunctory fashion without an understanding of what they meant. He waived his lengthy service right to go to the secretary and see if he could be put on probation, notwithstanding this problem. He didn't even know what it was, but he signed that away. And that's it, I think, at A221. So they didn't give him enough information about the consequences of what he was doing, is what you're saying. Yes, yes. And that is laid out in the record by the judge, not just my saying. He reached those findings of fact in great detail. Well, maybe not in great detail, but from my perspective, not in as great detail. Tomorrow, let me ask you, I want to make sure that I understand your position with respect to what we've called, by way of shorthand, the waiver issue. And I think when the panel is speaking about the waiver issue, what I guess we're talking about is the point, the issue that arises, if you will, from the fact that ineffective assistance of counsel was not asserted before the correction board. It was only asserted for the first time in the Court of Federal Claims. And I think I understand what you're saying in response to that, and I think that came from both your response to questions from both Judge Dyke and Judge Prost, but I want to make sure I understand it in my mind. What you're saying is, yes, true, I did not raise ineffective assistance of counsel before the correction board, but it does not matter because this issue plays into a jurisdictional issue, namely, voluntariness, because the cases like Tippett, Adkins, and others say that in order for there to be jurisdiction in the Court of Federal Claims in a military personnel case where someone is asserting that they were improperly removed, their removal has to have been involuntary to provide the basis for Tucker Act jurisdiction. So you're saying since it's jurisdictional, and since jurisdiction can be noticed at any time, the fact that I didn't raise it below is excused? Yes. I apologize for being long-winded, but I wanted to make sure I understood what you're saying. Is that it? I won't try to be conversely short. Yes. And I would rely upon Tippett. This Court sent Tippett back to the Federal Court of Claims with instructions to do something, and they did. They had an evidentiary hearing on the question of ineffective assistance of counsel. I'm sorry. I'm not talking about whether it was proper to send it back for hearing. I'm just talking about the waiver point. You're saying is, look, true, I didn't raise it before the correction board, but it doesn't matter because it's a jurisdictional consideration, and jurisdiction can be noticed at any time. Hence, I could raise it. It was not a problem that I didn't raise it until I got to the Court of Federal Claims. That is my perception of the law, and I read it in the cases that we have cited. Okay. Now, I just wanted to understand your contention. Okay. I just wanted to understand what you were saying on that. Thank you very much. Now, you have, I want to be clear, Mr. Prouty was up there for 15 minutes. He used his full 15 minutes, then he went over by 5, so that's 20. And I said that he'd have his full 5 minutes rebuttal because of a lot of questions, so he's going to have a total of 25 minutes all together. Now, right now, you've been up there for, you had your full 15, and now you're at 7 1⁄2, so you have a little bit more time. You can go to 10 if you want. You don't have to, but I want to let you know you do have time. At times, unless your Honor is wise to stand down, I think this is why. That's fine. I just want to let you know you could if there's any more you need to say. Thank you. Mr. Prouty, you have, as I said, your 5 minutes of rebuttal. Let me ask you on this waiver issue here, what is your response because it's really come into much sharper focus for me thanks to the questions of Judge Dyke and Judge Proust. What is your response to Mr. Meyer's argument, because you and he have brought to us an interesting case here on this jurisdictional question. He is saying, look, voluntariness is jurisdictional, and I think you'd agree with that. That's a jurisdictional consideration, and then he would go on and say, as I think he does, jurisdiction can be raised at any time, which is true, hence it's okay that I did not raise before the board this jurisdictional issue in effective assistance of counsel. What is your response to that? The problem is that it's also being applied on the merits as well, because, of course, the waiver informed a large portion of the merits determination by the DCMR, and essentially, under Mr. Meyer's view as not only the motion to dismiss, but it only made the motion for adjustment of the administrative record. The waiver argument would be total and complete, and he did not raise in effective assistance of counsel, and therefore, he would be stuck behind the waiver. But by virtue of the fact that the government had a motion to dismiss for jurisdictional reasons, he was then able to import that wholesale and use it on the merits. And we see that in the court of claims decision, because the three-paragraph, one-page portion of the decision that addressed the motion of adjustment of administrative record, the first paragraph talked about the standards for motions for adjustment of administrative record. The second paragraph talked about the waiver, the issue that was waived. That is, it talked about the ineffective assistance of counsel. Then there's the final paragraph. So, you know, half of the substance of the court of claims decision was based on a subject that had been waived below for the DCMR, and which, of course, had formed a large portion of the DCMR's decision-making. So by the happenstance and good fortune of the government making a motion to dismiss for jurisdictional reasons, he was able to cure his defect on the merits, and that cannot be right. Well, why is this jurisdictional? I'm still under Fisher. If the statute is money mandating, and this statute has been held to be money mandating, there's no question about that. What's jurisdictional about the question of whether this particular individual has a claim under that statute or not? Well, there's no question that he hasn't, that the claim is based upon the money mandating statute. And this, again, is one of those cases where jurisdictional merits, of course, sometimes are intertwined. But that's not my question. Not whether the jurisdiction and the merits are intertwined, but what's jurisdictional about the voluntariness? Isn't that just a question of whether he has a claim on the merits? The jurisdiction in the Court of Federal Claims is dependent on whether there's a money mandating statute. You agree there's a money mandating statute, right? So why is this a jurisdictional issue? Well, again, as raised below, it was raised as a jurisdictional matter because, of course, the resignation, therefore, Well, because you like to call everything jurisdiction. I would not. However, I would say that although we suggested this was jurisdictional, You would say, Mr. Pryor, that it's a money mandating statute, but that under the law, someone who has been has been who has left the service voluntarily cannot bring themselves within that statute. I would certainly say so. Let me ask you about, just to follow up to Judge Shull's question, and I'm backtracking a little, but whereas jurisdiction can be raised at any time, is it any different assuming that, in this case, jurisdiction was at issue, jurisdiction in terms of the voluntariness, was at issue before the Board, and the argument of ineffective counsel was not raised before the Board. Does that avoid, then, the argument that jurisdiction can be raised any time and, therefore, all different new Absolutely. Absolutely right. And for very obvious reasons, that this was the issue of waiver, not the waiver of the argument, but the waiver of his rights was before the Board. It was clearly before the Board, and it informed everything the Board did, because we're in a chapter four posture. And, of course, informed were the bases, or one of the large bases, for the Board's decision that, no, we're not going to give relief, there was no injustice here, because he had the ability to challenge all sorts of things, but he did not do that because we never had a court marshal because of his voluntary decision, which, of course, foreclosed the chance of a back-up discharge, and a federal criminal conviction, and time in jail. And those were things that, of course, informed everything that B.C. Law did. And to suggest that it's a new argument allowing him to sort of break out the idea of ineffective counsel at this late date is just not possible. So, therefore, even though jurisdiction can be raised at any time, in an instance where jurisdiction has already been raised, and the arguments have been made, you can't re-argue it based on different arguments. Absolutely not. And for those reasons, the court should reverse the decision of the court of appeals. Thank you, Mr. Prouty. Mr. Myers, thank you. The case is submitted, which we'll hear